Good morning and welcome to the Ninth Circuit Court of Appeals. My name is Morgan Christen. I'm one of the judges on the circuit court. My chambers are in Anchorage, Alaska. I'm delighted to be sitting this week with two of my colleagues from the circuit court. On your left, Judge Bress, whose chambers are here in San Francisco, and on my left, Judge Van Dyke, whose chambers are in Reno. I have a little bit of housekeeping because there are four cases that have been submitted on the briefs, and so I just need to make note of that for the record. The first is 22-16995, Flynn v. Zarenda. 23-15090, Mulder v. Marks. 24-6506, United States of America v. Johnson. And 24-1515, Cruz Alvarado v. Bondi. We will not hear argument in those four cases. The first case on the oral argument calendar is California Crane School v. Google, 24-4604. We're ready to hear your argument when you are ready to present it. Proceed, Your Honor. Yes. Oh, thank you. Thank you. Thank you. May it please the court, I would respectfully request five-minute rebuttal out of the 15 minutes. That's fine. Yes, out of the 15 minutes. You can spend your time the way you want to spend it. Okay, and also, as a personal request, I forgot my hearing aids, so if you could speak up just a little bit, I would respectfully, on any questions, so that I know what you're inquiring about. This is a private antitrust action. It was brought under Section 4 and 16 of the Clayton Antitrust Act. It charged the defendants with violations of Sections 1 and 2 of the Sherman Act. The fundamental issue that was presented was that there was, of course, under Section 1 of the Sherman Act and under Section 2, either a contract or a combination working together or a conspiracy. And in this case, all three of them are predominant. In the court below, the court was of the view that we failed to allege facts sufficiently enough to make it feasible or understandable that there was, in fact, something going on. We pointed out to the court in our briefs that since that time, there has been a decision by the federal court in Washington which fundamentally corroborated all of our accusations. We charged that, to begin with, there was a potential competition for Apple and Google in the so-called search business. The market is the search business, and also as part of that, the market is the advertising that people put into to get the search coverage. That's our case. We represent the advertisers. We charged that under the agreement that there was a contract and under that agreement that Apple was being paid billions of dollars, we say, not only for giving special, it's called default, to Google or to anyone inquiring under Siri or any of the Apples, would go directly to Google. And we charged that they also, in addition to those payments, were getting part of the profits of it. And in exchange for that, we charged that Apple agreed and it was understood that they would not compete in the search business. To begin with, Google starts out with some 90, more than 90% of the market, almost 88% of the mobile or iOS. In that position, 65% of the traffic given to Google is over Apple devices. And Google was concerned and issued a so-called code red that if Apple decided to really get into the search business, that they could immediately lose half of their business. Google could lose half of its business. So there were private meetings by the chief executive officers. And I will say the court below said nothing about that except, I mean, the court below said, well, they could have been talking about anything. Well, of course, we know that's not what the law is in this circuit. But in addition, subsequently it was shown that they were specifically meeting, the CEOs, specifically meeting for the purpose of reconfirming and policing their agreement. The meetings as pled don't seem that probative. What are the specific allegations of a conspiracy that you think show that you've stated a claim? We set out all of our allegations, obviously, in our briefs, specifically at page 15. But in specifics, they met. And for the purpose of the meeting, they formulated their agreement and their agreement. What specific allegations do you have that would support that, though? It seems like there was a meeting. But what more do you have other than the fact of the meeting? We said and alleged that at the meeting they shared the profits. They agreed to share the profits. Well, they said they can have a business relationship. That's that's different than whether they've agreed to, you know, into a conspiracy, an antitrust conspiracy. Yes. But we said that at the meetings, they agreed to share the profits. They agreed that would pay extra billions of dollars and that would stay out of the business, out of the search business. But I want to make one point that we did, Your Honor, on page I think it was 59 or so. In this circuit, this court established that one of the one of the real principles of action that can be considered is a plus factor. It was invented here in 1952. When there was a meeting, that was evidence of a plus factor in a criminal case, even though the defendant at that time denied that anything happened at the meeting. We now know that there's no denial. We now know that that is exactly what we said. It was exactly what they, in fact, discussed and what they agreed upon. What is your best argument that the district court heard by not not considering all of the after later learned evidence? I think that the that the court was making its inferences in favor of the defendants. They said every every I'm sorry. I didn't mean to interrupt you. This goes back to Judge Bress's question. There's the there's the allegations that were squarely before the court and I think fairly before the court. But the briefing that we have here dips pretty heavily into other evidence that wasn't before the court. And so what I'm I'm trying to tease out the extent to which you're relying on anything that came out of the D.C. opinion, Judge Maida's opinion. And I and I don't it seemed to me that you're relying on it pretty heavily. So my question is what's your best argument that the judge the district court heard by not allowing you to consider that to reopen? He thought that the agreement to share profits, which, by the way, is illegal per se under the Supreme Court's decision. He said that the agreement to switch to share profits was an ordinary business and minute issue and to the betterment of both of the parties. He thought it was a good business idea. He also thought that with regard to the payments that the payments, the billions of dollars of payments for the purpose of, as we alleged, keeping Apple out of the business, he said again that that was good business. He said that the meetings were good business. We outlined the specific facts that we alleged in our complaint on page three of our brief, Your Honor. This is the reply brief because they questioned it. And we set each one of them out for from page three all the way to page each of them with the designations of where they are in the complaints. And they go from page three to page eight. And so we put each one of them down. I think the district court my understanding is the district court understood that the evidence from the that was produced in discovery in the D.C. case was available to you earlier before the court had ruled before there was argument in the summary judgment. Is that correct? Was it available? Well, some of it existed. We did not monitor the trial. The court may be aware that the trial was held. There was substantial secrecy with regard to that to that case. When we did get the evidence, we presented it to him. It may be that we didn't get it right away. The court has to understand that we filed this case in 2021. And in two or three months, we were the discovery was stayed. We have had no discovery in the case at all. We had attempted to. We noticed depositions. We did interrogatories. We got nothing. Well, finally, what we got from this, what we got from Washington was that we had the government's complaint. We didn't have the specific documents. We finally got the specific documents, the specific documents right in the document where they share the revenue. And the court also also subsequently showed how Apple was interested in getting in the business, which was the threat, even going so far as to hire the top search people person, John Andrea, top search person at Google. Right. OK. Forgive me for interrupting. My understanding is that was not before Judge Pitts. And my question is, what is your strongest argument that it should have been that the judge erred by not considering it? Obviously, it corroborated our allegations. It showed that it showed that they in fact had a combination that we're working together. It showed that they had a contract. It showed that the contract specifically allowed Google to get all of the advertising from Apple. It showed that they had the percentage, 40 percent of the revenue for Apple that they received for sitting on the sidelines and doing nothing. We then what we did is we tried to bring that to the court's attention. OK, so maybe he didn't want to see it. I have I don't know. But subsequently, when there was the decision, the court may remember that we tried to call back our notice of appeal to give him an opportunity to see the decision by Judge Mayden, which completely was contrary to everything that he said. But this court this court denied that. The court denied it in an order that talked about the procedure, the rule for requesting an indicative ruling. I don't think you followed that procedure. But if I'm wrong, I would like you to tell me. Well, this was, Your Honor, this was Rule 12. Now, the judge had the court had the obligation to look at the facts in a light most favorable to us. The court was obligated to give us the inferences. He was given the inferences to the other side. OK, so I think I've taken you way into your time that you wanted to save for rebuttal. Would you like to say that? Thank you, Your Honor. Before you go away, do you have another question at this point? No. Thank you, sir. OK, I want to point out just before I sit down, we had a whole series of acts as as the so-called plus factors, not only the meeting. If you can continue, I'm going to make them turn the clock back on. So it's up to you how you use your time. Thank you very much. All right. We'll hear from Apple. Good morning. Good morning, Your Honors. May it please the court. Melissa Arbuscheri on behalf of Apple. They made a conscious, intentional decision to bring one and only one antitrust theory. And it's a Section 1 per se horizontal conspiracy based on an agreement by Apple not to compete in the general search and search advertising market. The problem for them, and as four separate district court judges found, is they failed to bleed the existence of that particular agreement. Instead, what they pointed to was a vertical distribution agreement that all knew existed that's been publicly available, and they asked the court to infer from that the existence of this separate, secret, non-compete conspiracy. Again, four district court judges looked at these allegations and said they were insufficient to satisfy Twombly and all of its progeny. On appeal, what do they do? As Your Honor pointed out, the vast majority of their appellate brief is devoted not to their second amendment complaint, which is before the court, but instead to things that happen after the fact. And they did file a motion to set aside the judgment. The district court denied that, and it denied it for two independent reasons. One is it was not newly discovered evidence. And Your Honor asked my friend about this. They did not challenge that ruling on appeal, and they still have no answer today. The fact is the JCA and the ISA were available after the Google trial. It was posted on the DOJ public website no later than November 17, 2023. That was months before the motion to dismiss hearing, months before the motion to dismiss order, months before the judgment in this case. That was an independent ground why Judge Pitts denied that post-judgment motion, not challenged on appeal and abuse of discretion regardless. And then they rely very heavily on Judge Mehta's decision, which came after judgment in this case. Again, they tried to file something in this court saying you should recall the notice of appeal. We said there's a procedure for that. It's the indicative ruling procedure. The court said the same thing. Ten months have gone by. They've made no effort to avail themselves of that. So what that means is we're here before the court on the second amended complaint, the allegations that the judges looked at, and they say nothing more than the fact that there was a vertical distribution agreement, which is not subject to a per se illegality standard, and they tried to pair that with the fact that they say Apple could have competed in this market, and also CEOs met publicly at a restaurant in Bay Area during this time. Twombly requires far more than that, and for good reason. They could have pled a Section 2 claim against Google, which was what was at issue before Judge Mehta. They could have tried a rule of reason case. If the only thing they want to go forward on is a per se agreement not to compete, Twombly, this court's case is in musical instruments, in Kendall, in DRAM, in namespace, say you need to plead more than simply allegations that are at best consistent with the conspiracy but don't cross the line over at the plausibility. What is the something more they have? There's nothing in the complaint. You can look through the bullets in their reply brief, and again, all it points to are these agreements. Well, let's look at these agreements. They say in their complaint, and this is paragraphs 22, 23, 24, and 25, that what they call the pre-installation agreement and the revenue share agreement, which I think are now the ISA and the JCA, they say these have provisions that include the non-compete. Well, those are in the excerpts of record. You can look at them. There is no non-compete agreement in there, and so that argument doesn't hold up. Elsewhere in the complaint, they sort of suggest, well, maybe there's some other written agreement out there or some oral agreement, but those are purely conclusory allegations. There's no evidentiary facts anywhere in the complaint to support that. It seems like they want us to say these are two very big, important companies. They reached an extremely mutually beneficial agreement, and we should then infer from that that there's an agreement not to compete over the thing that they're agreeing over. I think that is what they want the Court to say, and the problem with that is it completely blurs the line between the concerted action that's required under Section 1 and the unilateral action that's the focus of Section 2, and it also blurs the line between per se and rule of reason analysis. Because what you need here is concerted action, an actual agreement, a meeting of the minds, a conscious commitment to stay out of the market. And if you look at other allegations in their complaint, they completely counter the notion and make far less plausible the idea that it's consistent with that kind of conspiracy. Because after all, what do they say? They say this is a two-decade-long conspiracy entered into in 2005, and yet at paragraph 187, they say that as late as 2014, Apple was purportedly working to build a general search engine, nine years after they supposedly agreed that they weren't going to compete in this market. And then today, they point to Judge Mehta's finding with respect to 2018, hiring away the former head of Google Search, again, many years after this agreement was purportedly formed. And so just like other cases, musical instruments and the like, there's allegations in the complaint that counter the notion that there's some sort of secret non-compete here. Counsel, just one minute, please. Do you have any questions? No. Do you have any further questions? I don't think we have any further questions. Thank you very much. Appreciate it. They split their time. Good morning. John Schmitlein for the Google Defendants. May it please the Court. Unless the Court has questions for me specifically about the Twombly line of questions and the conspiracy allegations, I'm— Do you have any questions, Judge Van Dyke? I'm happy to address those. I was trial counsel. Judge Brest, do you have any questions? I was going to ask about the arbitration issues. But maybe you were going to address those. Yes, I was going to say I'm happy to address those since those are specific to Google. If you had questions about the trial, I was trial counsel for Google. I don't think we do. I can speak to Judge Maida's opinion. This is, I think, a fairly straightforward application of well-settled California law on the enforcement of arbitration agreements. Under California law, in order to find an arbitration agreement unenforceable and valid, plaintiff has to plead facts supporting two different things, procedural unconscionability, substantive unconscionability. Multiple courts have found, not just in this case but in other cases, that Google's arbitration agreements are procedurally valid. And the reason that they have repeatedly found those is because Google provides a very open, notorious, well-flagged opt-out provision that allows a plaintiff within 30 days of executing the arbitration agreement to choose to, I mean, I'm sorry, of the agreement. What's the story with the UCL claim and its arbitrability? So this is the McGill rule. And the Ninth Circuit has found in the Blair case that the McGill rule survives preemption under the FAA. I think that respectfully, I think that that's wrongly decided. But Judge Pitts following or applied Blair to find that the UCL was not preempted and that it was valid here. So we're bound by our precedent. Can I just be clear about the argument that you're making? You're not telling us to deviate from precedent, I don't think. I am not. I mean, we're preserving that argument for purposes, but I think there are two potential arguments. One is that McGill should be overruled and that I think the FAA preempts that. But understanding you all are bound by Blair, unless you all are going to revisit that, that's decided. The other question is the question that was presented in the Hodges case. And in Hodges, the court found that notwithstanding the nature of the claim there and a plaintiff's explicit or a request for public injunctive relief under a UCL claim, the court there found just calling something public injunctive relief doesn't necessarily make it so. We can look beyond that. We can look at the nature of the claim. And as I understand the test for what qualifies as public injunctive relief, the claim, the primary purpose and effect of the claim for injunctive relief has to be this general public injunctive benefit. In other words, it has to be a benefit to the public at large. And in Hodges, the court there said, looking at the particular injunction that was sought and the language said, we don't think that the primary purpose in that case is actually a public diffuse benefit, that it actually is focused on a more narrow group of people. And given the number of people who use your client's products, would this not fit within the test? Well, Your Honor, I would point you to page 250 of the record, which is their complaint, the second medical complaint, where they describe their claim as, the public injunctive relief claim, as bringing the claim to restore competition in the market for search advertising. Because that is who the plaintiff, that's their standing in the case, is as a search advertiser. That has always been sort of the focus of this case. I know you think the district court should have sent this to arbitration, but your client ended up prevailing on the merits. So, would this be an issue that needs to be reached if the district court is correct on the merits? It does not, because for the same reason that the claim should be dismissed up for Sherman Act, Cartwright Act, it's the exact same conspiracy claim. So, you can certainly affirm all of those claims, dismissal of those, and not reach this issue of whether the carve-out for the UCL claim was erroneous in our judgment. That would be an affirmance across the board? Correct, Your Honor. We raise this as an alternative ground. I appreciate that. Judge Van Dyck has a question.  So, I'm trying to think through if we do . . . if you are correct in your McGill argument that this should go to arbitration, and the district court was wrong on that one narrow issue, then how could we just affirm that? I understand that you'd rather win now than perhaps win later in arbitration on that claim, right? So, I can understand practically why you might just prefer to . . . but can we do that? Can we just affirm the arbitration . . . can we affirm the district court's decision if we think the district court was wrong on the McGill issue? I think you can. Why is that? We moved . . . as a procedural matter, we moved to dismiss on two independent grounds. We moved to dismiss on the arbitration grounds, and we moved to dismiss on sort of 12B6 grounds. And we think those are alternative . . . But wouldn't it be usurping, basically, the authority of the arbitrator? But, you know, in theory, you could do that in any case, you know. Let's assume for a second that claims clearly should be arbitrated, right? And so you'd say to the district court, we think you should send these to arbitration, but secondly, if you don't think you should send them to arbitration, we think you should dismiss these claims for some other reason. And then the court would just . . . I'm trying to think of why a court could ever just say, well, we're just going to dismiss them and ignore that they should go to arbitration because if they're supposed to go to arbitration, it's not your job to decide as a court to dismiss them, it's the arbitrator's. The arbitrator might disagree and think they shouldn't be dismissed, right? The Google arbitration agreement does not have a delegation clause that delegates the question of arbitrability to the arbitrator. So I think the district court is basically . . . Right, but if you think that the district court was wrong . . . So it is for courts to decide whether it's arbitrable, but if you think it's arbitrable, you're still usurping . . . because you're deciding . . . you're killing issue as the court. And in theory, I mean, I don't know what . . . they don't want to go to arbitration, but in theory, they could prevail in arbitration on that claim and they would be losing. So if the choice is losing before us, prevailing in arbitration, I don't think they would choose to say, yeah, it should be arbitrated, but you should just go ahead and decide it yourself. I don't understand why we'd ever . . . How would we get to the question, that other question? I think the district court does have the discretion to assume for the moment arbitrability and just really dig in on the merits of the 12b-6. That's what I'm struggling with. I'm kind of . . . well, how could that be? Because if it's . . . I guess you're saying the 12b-6 would be part of the arbitrability. I don't . . . You can do a motion to dismiss in arbitration, right? Excuse me? You can do a . . . the case could go to arbitration, and then before the arbitrator, you could do something like it. Correct. A motion to dismiss and say this claim should be dismissed in the arbitration. So I'm not sure that deciding whether threshold question, a delegation deciding whether something is arbitrable is the same thing as saying a claim should be dismissed because it has no merit. Again, I think the question is can the district court with two independent grounds for dismissal, which is what we asked for, one through arbitration, one through on the merits, could the court take up both of those or only the merits 12b-6? And we think the court can, but I understand your question . . . You think it can because you're the one who gets to decide. You're the one that can enforce the arbitration because . . . So you're essentially would be waiving arbitration . . .  . . . and saying just rule in our favor. Okay. All right. You're well over your time. Hang on. I just heard a little noise. Just one quick question. On this question, because it was part of the district court's judgment, does it matter that your client didn't cross appeal on this issue? You did raise it in the briefs and say, well, I think technically the district court should have sent this to arbitration, but does that matter in our consideration? I think not because I think I've always understood that you need to cross appeal if you are asking for a reversal of a judgment below. And I think here, because the court dismissed and ruled in our favor, we're not asking for a reversal of the judgment. We're offering another independent grounds for affirmance. I hope that makes sense. Yeah. Thank you. Thank you very much. Thank you, Your Honor. May it please the court. I want to make sure that the court understands that our allegations in the complaint prior to the decision or anything else are set out in detail from page three all the way to page eight of our responding brief. Secondly, I would like to point out that, of course, we're private plaintiffs, so we don't have the discovery tools like the FBI taking witnesses or grand juries or pre-depositions. We don't have any of that. And as a matter of fact, we were stayed on all of them. We would say that the decision by Judge Mehta, which makes this violation, these violations, quite clear, is that at least as a matter of procedure that it corroborates what we alleged. And therefore, it can be shown that what they did, what we alleged, when they had the contract that shared profits, the contract that gave everything to Google, the statements by the court that they charged super competitive prices because they had a monopoly. And I briefly wanted to say, you know, with regard to the arbitration, this is a monopoly. And we were able to have our own affidavit. It's a take it or leave it situation. You know, you have nothing to say about it. And in addition, with regard to the McGill case, the judge below said, yes, you are asking for an injunction that would benefit everyone. But you don't have the precipitory violation, the combination or the conspiracy. Well, now we're showing, yeah, well, we do have that. And I would point out that it always has been the policy of the Ninth Circuit that you don't waive your right to a trial before there's a dispute, that the pre-dispute statement that if you don't opt out, you don't get a trial, is contrary to the policy of this circuit. I don't follow this. I mean, it seems like you were presented, if you're talking about the arbitration agreement, you were presented, your client was presented with the ability to opt out of it. So you could have opted out. We could have. You say that we could have opted out. And then what? And then where would we go? And then with Google? Does Google say that, oh, they're not going to take us? We were excluded from 94 percent of the market. Microsoft tried to come in. They couldn't get in, not even a dollar. You're saying you could opt out and still go with Google, right? Like, I mean, you could actually opt. This isn't a situation where you'd opt out and not be able to advertise with Google. You could opt out and still advertise with Google. But there's no available, what are you going to use? The rest of the market is 2 percent, 3 percent. If we opted out, we would be out of 94 percent. And Microsoft itself, the largest company in the country, was unable to break through even though it was willing to offer $10 to $15 billion and had invested in Bing over $100 billion. Thank you very much, Your Honors. Thank you all for your argument. We'll take that case under advisement.
judges: CHRISTEN, BRESS, VANDYKE